FRED BIERY, UNITED STATES DISTRICT JUDGE
Before the Court are Defendants' Motion to Dismiss Plaintiffs' Original Complaint (docket no. 11) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, plaintiffs' response (docket no. 14), defendants' reply (docket no. 22), Defendants' Motion to Dismiss or for Summary Judgment Based on Mootness (docket no. 25), plaintiffs' response (docket no. 27) and defendants' reply (docket no. 33). After careful consideration, the Court is of the opinion defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) should be granted in part and denied in part, and defendants' motion to dismiss or for summary judgment based on mootness should be granted in part and denied in part.
BACKGROUND
The named plaintiffs in this proposed class action are Andrea Beleno, Geoffrey Courtney, and Keith Taylor, who allege they are the parents of children born in Texas between December 23, 1993, and January 10, 2009, and Nancy Pacheco, who had her first child after suit was filed in August of 2009. Plaintiffs seek declaratory and injunctive relief on their behalf and on behalf of others similarly situated for alleged deprivations of liberty and privacy rights, and rights to be free from unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments to the United States Constitution. They also assert violations of search and seizure rights arising from Article I, Section 9 of the Texas Constitution and Texas common law. As relief, plaintiffs seek declaratory and injunctive relief, attorneys' fees, and costs.
The named defendants are the Texas Department of State Health Services ("DSHS") and its Commissioner, David L. Lakey, M.D. Plaintiffs also named as defendants Texas A & M University ("TAMU"), together with Nancy W. Dickey, M.D., and Roderick E. McCallum, Ph.D. (collectively "Texas A & M defendants"). Defendants contend plaintiffs do not correctly state these officials' positions. Defendants maintain that Nancy W. Dickey, M.D., is Vice Chancellor for Health Affairs of the Texas A & M University System ("TAMUS" or "the System") and President of the Texas A & M University System Health Science Center ("TAMHSC"), which is a component of TAMUS, but is a wholly separate entity from TAMU. Defendants state that Roderick E. McCallum, Ph.D., is Interim Dean of the School of Rural Public Health ("HSC-SRPH"), which is part of TAMHSC. All individual defendants are sued in their official capacities only.
Plaintiffs allege that since 2002, defendants have unlawfully collected or "seized" blood samples taken from all babies in Texas at the time of birth (sometimes referred to as "NSB testing"); and continue to unlawfully store those samples or "spots" indefinitely for undisclosed purposes unrelated to the purposes for which *937 the blood was originally drawn without knowledge or consent of the infants' parents. The law in effect requiring NSB testing when this suit was filed on March 12, 2009, was found in Chapter 33 of the Texas Health & Safety Code. Plaintiffs do not challenge the State's interest in having a NBS program in the interest of public health or challenge that the blood samples are taken for the NBS testing pursuant to Chapter 33. Plaintiffs contend, however, that "defendants, without any authority or legal justification, have added to the practice of the State's forty-four year old mandated newborn screening program in which hospitals, birthing centers, and midwives draw blood from a baby's heel-no parental consent is required-so the sate can test for a variety of birth defects. Thus, plaintiffs acknowledge, "babies who show detectable disorders often can be treated early to prevent disabling disorders from developing."
Plaintiffs state they "do not object to the State's mandated newborn screening program so long as safeguards are in place to destroy an infant's samples within a reasonable period of time." They state that they challenge defendants' alleged "expropriating an infant's blood sample indefinitely, without their knowledge or consent, effectively making it their property for undisclosed non-consensual purposes unrelated to the purposes for which the infants' blood was originally drawn."
Moreover, plaintiffs contend, because "the blood spots contain deeply private medical and genetic information, plaintiffs are concerned about the potential for misuse of that information and fear the possibility of discrimination against their children and perhaps even relatives through the use of such blood samples and research activity thereon." According to plaintiffs, "[u]nder defendants' current policy and practice, researchers can use the infants' samples, which consist of five blood spots on a card, for cancer research, lab equipment calibration, and other undisclosed matters indefinitely, without the knowledge or consent of their parents, which are unrelated to the purposes for which the infants' blood was originally was drawn."
Defendants move to dismiss plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend this Court lacks jurisdiction over plaintiffs' claims under Rule 12(b)(1) because (1) Eleventh Amendment immunity bars plaintiffs' claims brought directly against DSHS and TAMU; (2) Eleventh Amendment immunity bars plaintiffs' claims brought against the individual defendants under the Texas Constitution and Texas common law; and (3) plaintiffs lack standing to bring this suit because they have not alleged an injury-in-fact. Defendants also contend plaintiffs have failed to state a claim upon which relief can be granted under Rule 12(b)(6) because: (1) there is no cause of action against the individual defendants directly under the United States Constitution; (2) plaintiffs have failed to allege a Fourth Amendment claim because there has been no unlawful search and seizure; (3) plaintiffs have failed to allege a Fourteenth Amendment claim because there has been no violation of constitutionally protected liberty or privacy rights; and (4) plaintiffs have stated no specific claim against any Texas A & M defendant and therefore the claims against this defendant should be dismissed. Defendants additionally contend that, had plaintiffs brought suit against DSHS or TAMU "as such claims should be brought-pursuant to 42 U.S.C. § 1983 -they nevertheless would have stated no cognizable claims against DSHS or TAMU." Accordingly, defendants seek dismissal of plaintiffs' claims against DSHS and TAMU under Rule 12(b)(1) and Rule 12(b)(6).
*938 In response to defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), plaintiffs do not dispute that they have misstated the individual defendants' positions. Accordingly, the style of the case shall be amended to reflect their correct designations.
Regarding this Court's jurisdiction over plaintiffs' claims, plaintiffs apparently do not dispute that Eleventh Amendment immunity bars plaintiff's 42 U.S.C. § 1983 claims brought directly against DSHS and TAMU. However, plaintiffs do argue: (1) Eleventh Amendment immunity does not bar plaintiffs' claims brought against the individual defendants; (2) Eleventh Amendment immunity does not bar claims brought under the Texas Constitution and Texas common law for injunctive and declaratory relief; and (3) that plaintiffs have standing to bring this action. Plaintiffs further argue they have stated claims upon which relief may be granted because: (1) plaintiffs have stated a cause of action under 42 U.S.C. § 1983, the Texas Constitution and Texas common law; (2) plaintiffs have stated a Fourth Amendment claim; (3) plaintiffs have stated a claim for violation of constitutionally protected liberty and privacy rights; and (4) the Texas A & M defendants' official roles in the NBS program are matters of fact which are not appropriate for resolution in a motion to dismiss. Defendants filed a reply contending that, even considering plaintiffs' responsive arguments, the motion to dismiss under Rules 12(b)(1) and 12(b)(6) should be granted.
Legislation passed by the Texas Legislature in the 81st Regular Legislative Session, HB-1672 and SB 2421 (hereinafter referred to as "HB-1672"), amends the existing law to add provisions for additional disclosures to parents, to allow for parents, legal guardians, and managing conservators to instruct DSHS to destroy an infant's blood spots after testing is complete and to address confidentiality and permissible post-testing use of the blood specimens. HB-1672 was signed into law on May 27, 2009, and was effective immediately. Defendants contend the new law, together with plans by DSHS to implement the new legislation, moots plaintiffs' lawsuit. Defendants address the mootness issue by a separate motion to dismiss or for summary judgment. Specifically, defendants argue HB-1672 satisfies all Fourth Amendment and constitutional privacy concerns raised by plaintiffs' lawsuit.
Plaintiffs respond that their claims remain a live controversy before the Court because newly enacted HB-1672, which defendants invoke, only partially provides plaintiffs prospective relief. Plaintiffs further argue that defendants fail to consider plaintiffs' position which seeks to provide relief for the class. Defendants reply that the relief plaintiffs seek has been afforded or will not redress their claims, they lack standing, and their claims are moot; notice of the Chapter 33 amendments is adequate to advise parents of their rights, including for the pre-HB-1672 group and the purported class; and lack of standing and/or mootness precludes class certification. Defendants additionally argue that plaintiff Nancy Pacheco's claims are moot because plaintiff Pacheco's child was not born at the time suit was filed.
DISCUSSION
I. Defendants' Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure
A. Standards of Review
A party's motion to dismiss for lack of subject matter jurisdiction is properly made pursuant to Federal Rule of Civil Procedure 12(b)(1). A claim may be dismissed for lack of subject matter jurisdiction *939 "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n. Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking to invoke the Court's subject matter jurisdiction has the burden of establishing that such jurisdiction exists. St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1252 (5th Cir. 1998).
Dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) when a party's complaint fails to state a claim upon which relief can be granted. "When deciding a motion to dismiss under Rule 12(b)(6), the District Court must accept the factual allegations as true and resolve all doubts as to the sufficiency of the claim in the plaintiff's favor." Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 387 (5th Cir. 2001). Although the complaint need not contain detailed factual allegations, it must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The allegations must be such that they "raise a right to relief above the speculative level." Id. ; see also Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) ("The complaint must contain either direct allegations on every material point necessary to sustain recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial") (internal quotation omitted). The United States Supreme Court recently stated that "a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955 ). Defendants contend, under these standards, plaintiffs' suit should be dismissed for lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted.
B. Defendants' Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction
1. Eleventh Amendment Immunity: Plaintiffs' Claims Brought Directly Against DSHS and TAMU Under 42 U.S.C. § 1983
Claims made directly against a state and state agencies are barred by the Eleventh Amendment to the United States Constitution unless the state has consented to suit or its immunity has been expressly abrogated by Congress. Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ; see also Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 280-81 (5th Cir. 2002) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."). A state's immunity from suit extends to claims for both money damages and equitable relief. Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (holding that a "[s]tate cannot be sued directly in its own name regardless of the relief sought").
DSHS is a state agency and TAMU is a state institution of higher education. TEX. GOV'T CODE § 531.001(4)(M) ; TEX. EDUC. CODE § 61.003(6). Courts considering the issues have determined that: (1) 42 U.S.C. § 1983 does not abrogate a state's immunity; (2) Texas has not waived its immunity from suit for 42 U.S.C. § 1983 claims; and (3) the state is not a "person" capable of being sued under 42 U.S.C. § 1983.
*940 Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ; Pennhurst State Sch. & Hosp. v. Halderman, (referred to as "Pennhurst" ), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ; Quern v. Jordan, 440 U.S. 332, 342-43, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ; Walker v. Scott, No. 10278, 1999 WL 153027, at *1 (5th Cir. 1999). Accordingly, plaintiffs' claims brought against DSHS and TAMU under 42 U.S.C. § 1983 must be dismissed for lack of subject matter jurisdiction. Plaintiffs' claims brought against the individual defendants in their official capacities under 42 U.S.C. § 1983, however, remain pending for disposition.
2. Eleventh Amendment Immunity: Plaintiffs' Claims Brought Against all Defendants Under the Texas Constitution and Texas Common Law
Plaintiffs' claims brought under the Texas Constitution and Texas common law must also be dismissed. The United States Supreme Court has held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the state that is protected by the Eleventh Amendment." Pennhurst, 465 U.S. at 121, 104 S.Ct. 900. State law claims brought against state officials in federal court are thus barred by Eleventh Amendment immunity. Id. This principle applies as well to state law claims brought under pendent jurisdiction. Id. Accordingly, plaintiffs' claims brought against all defendants under the Texas Constitution and Texas common law must be dismissed.
Citing Pennhurst generally, plaintiffs state that their claims under the Texas Constitution and Texas common law are within the jurisdiction of this Court because plaintiffs could bring the same claims in Texas state court. The United States Supreme Court in Pennhurst, however, reiterated that "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in federal courts." 465 U.S. at 100 n.9, 104 S.Ct. 900 (citation omitted). To the contrary, a state's waiver of immunity must be express and unequivocal. Id. at 100, 104 S.Ct. 900 (citing Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ). Plaintiffs have cited, and independent research has uncovered, no authority showing that Texas has waived its immunity from suit in federal court for alleged violations of the Texas Constitution or Texas common law.
Invoking the ultra vires exception to Eleventh Amendment immunity, plaintiffs further argue "the state law claims brought against the named state officials acting outside the scope of their authority are not barred by Eleventh Amendment immunity." Ultra vires is a "narrow and questionable exception" to Eleventh Amendment immunity to suit against state officials on the basis of state law. Pennhurst, 465 U.S. at 116, 104 S.Ct. 900 ; see also ids="11334896" index="52" url="https://cite.case.law/us/465/89/#p98">id. at 114, 104 S.Ct. 900 n.25 (stating that ultra vires exception is "very narrow exception" to Eleventh Amendment immunity).
In Pennhurst, the Court recognized the Ex parte Young doctrine allows suits for prospective injunctive relief against state officials allegedly acting in violation of federal law. Id. at 105, 104 S.Ct. 900. However, the United States Supreme Court continued, the Ex parte Young doctrine "rests on the need to promote the vindication of federal rights." Id. This need, the Court explained, "is wholly absent ... when a plaintiff alleges that a state official has violated state law." Id. at 106, 104 S.Ct. 900. Thus, the Court concluded, the Ex parte Young exception to Eleventh Amendment immunity "allows federal courts to hear suits against state officials if the suit seeks to force them to *941 conform their conduct to federal law," but does not apply to "suits which would seek to have federal judges order state officials to conform their conduct to state law." Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988) (citing Pennhurst, 465 U.S. at 89, 104 S.Ct. 900 ) ). In this case, plaintiffs seek to have this federal Court order the defendant state officials to conform their conduct to Texas state law concerning the blood spots taken from infants at birth. Accordingly, in this instance, it appears the ultra vires doctrine is inconsistent with the principles underlying Ex parte Young and Pennhurst .
To the extent the ultra vires doctrine may be found to be consistent with the principles underlying Ex parte Young and Pennhurst, it is a very narrow exception to the state's immunity which allows suits against a state official for violations of state law only when the official acts "without any authority whatever." Pennhurst, 465 U.S. at 114 n.25, 104 S.Ct. 900 ; see also Holloway v. Walker, 765 F.2d 517, 525 (5th Cir. 1985) (concluding that where state officials' acts were not "committed in the clear absence of all jurisdiction," case did not fall into ultra vires exception to Eleventh Amendment immunity, and dismissing all pendent state law claims including those for equitable, declaratory and legal relief). Such a suit may not be predicated on the alleged violation of discretionary duties and authority conferred by state law. Pennhurst, 465 U.S. at 102 n.11, 110-11, 104 S.Ct. 900.
In this case, there exists a range of state statutory authority under which defendants function. For example, the Texas Health and Safety Code confers authority upon DSHS and its commissioner to establish programs and conduct activities for the protection and promotion of public health, including "general supervision and control over all matters relating to the health of the citizens of the state." TEX. HEALTH & SAFETY CODE § 12.001(a). Relevant to this case, Chapter 33 of the Texas Health and Safety Code confers authority upon DSHS to establish and carry out programs and activities to combat morbidity, including mental retardation, in persons who have heritable diseases, and to establish and maintain a laboratory to "conduct experiments, projects, and other activities necessary" to develop screening and diagnostic tests for such diseases and to discover methods to prevent and treat such diseases, and to "serve other purposes considered necessary by the department to carry out the program." TEX. HEALTH & SAFETY CODE § 33.002. DSHS is further granted authority to prescribe the test procedures to be used and the standards of accuracy and precision required for each test, id. § 33.011(b), to follow up with persons believed to have heritable diseases, id. at § 33.014, and to use newborn screening information to compile and maintain data concerning prevalence of those disorders, id. § 33.015. Texas statutes also confer broad authority upon TAMU (Texas A & M University), TAMUS (the Texas A & M University System), and TAMHSC (the Texas A & M University System Health Science Center) and their officials (collectively "the TAMU defendants"), under Chapter 51 of the Texas Education Code, to serve the public and, within each institution's role and mission, to promote education, service, and research. TEX. EDUC. CODE § 51.354 (general responsibilities). It thus cannot be said that the defendant officials acted only to violate a ministerial duty or "without any authority whatever" regarding the public health functions at issue. Accordingly, the Court declines to find that the ultra vires doctrine, if applicable, operates as an exception to Eleventh Amendment immunity.
*942 Citing generally to City of Beaumont v. Bouillion, 896 S.W.2d 143 (Tex. 1995), plaintiffs contend "the Supreme Court of Texas recognizes the right to declaratory and injunctive relief for rights arising from the Texas Constitution." Bouillion, however, does not address the state's waiver of sovereign immunity to suit in federal court. See ids="9997869" index="71" url="https://cite.case.law/sw2d/896/143/">id. Plaintiffs presumably are arguing that Texas' waiver of its immunity to suit in state court for violations of privacy rights emanating from the Texas Constitution is tantamount to a waiver of the state's immunity in federal court. However, as discussed above, the United States Supreme Court restated in Pennhurst that "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in federal courts." 465 U.S. at 100 n.9, 104 S.Ct. 900 (citations omitted). For these and the reasons set forth above, the Court concludes that plaintiffs' claims brought against all defendants under the Texas Constitution and Texas common law are barred by Eleventh Amendment immunity. These claims must therefore be dismissed for lack of subject matter jurisdiction.
3. Plaintiffs' Standing to Bring This Action
A federal court lacks subject matter jurisdiction over a matter when a plaintiff lacks standing to bring suit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To establish standing to bring suit, plaintiffs must make a three pronged showing of: (1) an "injury-in-fact" which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct of which is complained; and (3) redressability in the sense that it must be likely, not simply speculative, the injury will be redressed by a favorable decision. United States v. Hays, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (citations omitted). "This triad of injury-in-fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Failure to establish any one element deprives the federal Court of jurisdiction to hear the case. Id. at 102-03, 118 S.Ct. 1003. Standing is a threshold jurisdictional issue which the Court must evaluate before addressing the merits of plaintiffs' cause of action. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).
Defendants allege plaintiffs have not met the first element of the requirements for standing to proceed in this federal Court. Specifically, defendants contend "plaintiffs have shown no injury-in-fact and, at most, their allegations are only conjectural and hypothetical." Defendants argue that plaintiffs "complain only of the potential for misuse of the blood specimens or 'medical and genetic' information contained in them." (emphasis in original).
As defendants point out, fear that an event may occur in the future is speculative and is not enough for injury-in-fact. City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Here, however, plaintiffs allege the storage of the infants' blood samples is an injury which has occurred and continues to occur, and there is reasonable fear of the potential for misuse because of the continued storage. Continuous and pervasive acts resulting in reasonable fear is enough for injury-in-fact. Friends of the Earth, Inc., 528 U.S. at 184-85, 120 S.Ct. 693. Accordingly, the Court finds that plaintiffs have standing to bring this action.
*943 C. Defendants' Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim
1. Plaintiffs' Causes of Action Brought Under the United States Constitution
Defendants argue plaintiffs' federal constitutional claims must be dismissed because there is no cause of action directly under the United States Constitution. Defendants contend plaintiffs should have pleaded their federal constitutional claims under 42 U.S.C. § 1983. Citing the Civil Cover Sheet submitted with their complaint, plaintiffs respond that they "have properly brought their cause of action under 42 U.S.C. § 1983." (Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Original Complaint, docket no. 14, p. 6) (citing Civil Cover Sheet submitted with plaintiffs' complaint at Section VI stating that " 42 U.S.C. § 1983" is the United States civil statute upon which plaintiffs are filing). Plaintiffs nonetheless offer to re-plead to include the statute in their complaint if the Court finds it necessary. Defendants' reply indicates they are satisfied that plaintiffs have sufficiently invoked 42 U.S.C. § 1983 as "a vehicle for their federal constitutional claims." See (Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss, docket no. 22, p. 11) ("Plaintiffs now inform that they wrote " 42 U.S.C. § 1983" on their Civil Cover Sheet. At most, § 1983 gives them a vehicle for their federal constitutional claims, but not their Texas constitutional and common-law claims."). Because Congress provided 42 U.S.C. § 1983 as the method for seeking relief against a state official for a federal constitutional violation, Hearth, Inc. v. Department of Public Welfare, 617 F.2d 381, 382-83 (5th Cir. 1980), the Court will out of an abundance of caution require plaintiffs to file an amended complaint which re-pleads their federal constitutional claims under 42 U.S.C. § 1983 against the named state officials in their official capacities. To this extent, defendants' motion to dismiss for failure to state a claim is denied.
2. Plaintiffs' Claim of Unlawful Search and Seizure Under the Fourth Amendment
Plaintiffs first cause of action is for perceived violations of plaintiffs' rights under the United States Constitution to be free from unlawful search and seizure. Plaintiffs do not challenge the initial collection of blood which is used for NBS testing, and do not object to the State's mandated newborn screening program, so long as safeguards are in place to destroy an infant's samples within a reasonable period of time.
Defendants contend plaintiffs' complaint fails to state a claim upon which relief can be granted because it does not specify any particular actions on defendants' part which gives rise to such violations. Plaintiffs allege that, since 2002, defendants have routinely collected blood samples from all babies in Texas at time of birth and stored this blood or "spots" indefinitely at the TAMHSC (the Texas A & M University System Health Science Center) for undisclosed research unrelated to the purposes for which the blood was originally drawn, without the knowledge or consent of the parents, and will continue to do so. Plaintiffs further allege defendants' actions, "done under color of state law and official authority, intentionally, and with complete, deliberate, conscious and callous indifference to the constitutional rights of plaintiffs' children and of the class, deprived them of their right to be free from unlawful search and seizure and continue to do so." The Court finds plaintiffs have pleaded enough facts to state a claim for relief under the Fourth Amendment which *944 is plausible on its face, Twombly, 550 U.S. at 570, 127 S.Ct. 1955, and have pleaded factual content which allows this Court to draw the reasonable inference that defendants are liable, Iqbal, 129 S.Ct. at 1949, for the alleged violation of plaintiffs' right to be free from unlawful searches and seizures. To this extent, defendants' motion to dismiss is denied.
3. Plaintiffs' Claim of Violation of Constitutionally Protected Liberty and Privacy Rights Under the Fourteenth Amendment
In their second cause of action, plaintiffs allege defendants have violated liberty and privacy rights conferred under the Fourteenth Amendment. Defendants contend plaintiffs make only a vague and generalized privacy claim without satisfying even the threshold requirement of such a Fourteenth Amendment claim-to define and clearly articulate a recognized specific liberty or privacy interest that they allege defendants are violating. Plaintiffs allege "the infant blood spots contain deeply private medical and genetic information, and were expropriated without knowledge or consent," a claim which involves bodily integrity. The Court thus finds plaintiffs have pleaded enough facts to state a claim for relief under the Fourteenth Amendment which is plausible on its face, Twombly, 550 U.S. at 570, 127 S.Ct. 1955, and have pleaded factual content which allows this Court to draw the reasonable inference that defendants are liable, Iqbal, 129 S.Ct. at 1949, for the alleged violation of plaintiffs' right to protected liberty and privacy rights. To this extent, defendants' motion to dismiss is denied.
Recognizing the threat to privacy implicit in the accumulation of personal information in computerized data banks or other government files, defendants note "courts have held that if there are sufficient security measures in place to protect an individual's private information, there is not violation of that individual's constitutional privacy rights." Defendants contend plaintiffs are adequately protected by statutes which provide safeguards against disclosure of the personal information collected by the State. They maintain that, to the extent plaintiffs have any privacy interest in use of the stored blood specimens, after the NBS testing is completed, those interests are protected by a comprehensive federal regulatory scheme, by Texas law, and by DSHS (Texas Department of State Health Services) and TAMUS (Texas A & M University System) policy.
Plaintiffs allege in their complaint:
Not only does [defendants' handling of the blood spots] violate the law, but it violates standard, mandatory medical research protocols of first obtaining informed consent from subjects before they are studied, using a method that explains all the privacy facets of the study. For example, the appropriate standards and protocols with regard to minor children in this instance are set out in 45 C.F.R. §§ 46.116, 46.408, regulations promulgated by U.S. Department of Health and Human Services, and include providing, among other things:
(a) A description of the research's purposes and procedure;
(b) Disclosure of privacy implications of the research;
(c) Whom to call if questions arise about the research;
(d) Parental consent; and
(e) A statement of no reprisals for declining to participate in the research
Plaintiffs additionally allege that "defendants observe no accepted professional protocols whatsoever in this regard. Nor have they disclosed what kind of financial interest or transactions are involved, such as taxpayer expense or whether the samples are sold." Moreover, plaintiffs continue, "[p]rior to 2002, defendants engaged in *945 the same practice, but claim they kept the infant blood spots for a period of limited duration." With regard to plaintiff Mary Overath, plaintiffs allege she:
had two children born prior to 2002, but she has no assurance or confidence that defendants have actually destroyed her children's blood sample. Nor does she have any idea whatever what kind of research was performed on her sons' blood samples and spots.
Given the law governing motions to dismiss and the substantive claims made in this case, the Court declines to find at this early stage in the proceedings that defendants' citations to general protocols show that plaintiffs have failed to state a violation of Fourteenth Amendment liberty and privacy interests for defendants' alleged handling of their infants' blood spots since 2002.
4. Plaintiffs' Claims Against the Individual Texas A & M Defendants in Their Official Capacities
Defendants contend plaintiffs have made no specific claim against the Texas A & M defendants. They also argue "nor is there any claim to be made" because "no Texas A & M defendant has anything to do with the newborn screening testing, and has no role in any policy or practice related to the NSB program other than to store the statutorily-authorized blood samples at the HSC-SRPH [Texas A & M Health Science Center-School of Rural Public Health, which is part of TAMHSC, the Texas A & M Health Science Center] and to occasionally process retrieval of specimens, only at the direction of DSHS [Texas Department of State Health Services]." A plaintiff must generally "identify a custom or policy which gives rise to the plaintiffs injury before a plaintiff may prevail." Mack v. City of Abilene, 461 F.3d 547, 556 (5th Cir. 2006) (citing Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ). Defendants do not dispute that plaintiffs have alleged such a custom or policy as it relates to the Texas A & M defendants. Although plaintiffs may not ultimately prevail on their 42 U.S.C. § 1983 claims, the Court finds plaintiffs have pleaded enough facts to state a claim for relief under the Fourth and Fourteenth Amendments which is plausible on its face, Twombly, 550 U.S. at 570, 127 S.Ct. 1955, and have pleaded factual content which allows this Court to draw the reasonable inference that the individual Texas A & M defendants are liable in their official capacities, Iqbal, 129 S.Ct. at 1949, for the alleged violation of plaintiffs' right to be free from unlawful searches and seizures and protected liberty and privacy rights. To this extent, defendants' motion is denied.
Defendants additionally argue, however, that the relief requested by plaintiffs "could be effectuated through the TAMHSC [Texas A & M Health Science Center] President, Nancy W. Dickey, M.D." Under this analysis, Robert E. McCallum, PhD, Interim Dean of the Texas School of Public Health, which is a part of TAMHSC, would be dismissed as a party-defendant. Plaintiffs did not directly address this argument and it appears to the Court to have merit. Dr. McCallum will, therefore, be dismissed as a party-defendant to this action. To this extent, defendants' motion is granted. However, if at a later time it appears his presence is necessary, the Court may order that he be re-joined as a named defendant in this case in his official capacity as Interim Dean of the Texas School of Public Health.
II. Defendants' Motion to Dismiss or for Summary Judgment Based on Mootness Under the HB-1672 Amendments to Chapter 33 of the Texas Health and Safety Code
A. Standard of Review
Article III of the Constitution confines federal courts to adjudicating actual *946 "cases" and "controversies." U.S. CONST. art. III, § 2. Under the case or controversy requirement, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) ). "This means that, throughout the litigation, a plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " Id. (quoting Lewis, 494 U.S. at 477, 110 S.Ct. 1249 ). "As a general rule, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." Environmental Conservation Org. v. City of Dallas, 529 F.3d 519, 527 (5th Cir. 2008) (internal quotation omitted). "If a dispute has been resolved or if it has been evanesced because of changed circumstances, including the passage of time, it is considered moot." American Med. Ass'n v. Bowen, 857 F.2d 267, 270 (5th Cir. 1988) (citation omitted).
If a case becomes moot, it deprives the Court of jurisdiction and should be dismissed under Rule 12(b)(1) of the Federal Rules of Procedure. See FED. R. CIV. P. 12(b)(1) ; Spencer, 523 U.S. at 7, 118 S.Ct. 978 (holding case becomes moot when it "no longer presents] a case or controversy under Article III, § 2 of the Constitution."); Environmental Conservation Org., 529 F.3d at 525 ("If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents"). Under this standard, defendants contend plaintiffs' claims are moot and their suit should be dismissed, or summary judgment rendered in defendants' favor, for lack of subject matter jurisdiction. Specifically, defendants argue HB-1672 amendments to Chapter 33 of the Texas Health and Safety Code moot plaintiffs' lawsuit. Because the Court is obliged to resolve the question of whether plaintiffs' case is moot as a threshold matter of jurisdiction, Environmental Conservation Org., 529 F.3d at 525, the issue will be decided according to the standard of review governing Rule 12(b)(1) motions set forth above, as opposed to those governing motions for summary judgment.
The following facts are uncontested, unless otherwise stated, and are set forth to provide a context for defendants' motion to dismiss based on mootness. Other facts, disputed and undisputed, are set forth and discussed in the analysis of the merits of the motion in subsequent sections of this Order.
B. Chapter 33 of the Texas Health and Safety Code Before Recent Amendments
As noted, plaintiffs filed suit on March 12, 2009, challenging defendants' actions related to the newborn screening program as it existed at the time under authority of Chapter 33 of the Texas Health and Safety Code. Chapter 33 provides for screening of newborns ("NBS") for heritable diseases. TEX. HEALTH & SAFETY CODE § 33.012. It confers authority upon DSHS (Texas Department of State Health Services) to conduct programs and activities to combat morbidity in persons who have heritable diseases, and to maintain a laboratory to (1) "conduct experiments, projects, and other activities necessary" to develop screening and diagnostic tests for such diseases, (2) discover methods to prevent and treat such diseases, and (3) "serve other purposes considered necessary by the department to carry out the program." Id. § 33.002. Chapter 33 further grants the Department authority to prescribe the test procedures to be used and the standards of accuracy and precision required for each *947 test, id. § 33.011(b), to follow up with persons believed to have heritable diseases, id. at 33.014, and to use newborn screening information to compile and maintain data concerning prevalence of those disorders, id § 33.015.
Prior to May of 2009, the law was silent as to how the specimens would be handled and managed, and to what explicit uses they might be put after the NBS testing was completed. Those decisions were left to the discretion of DSHS, which is charged with specific public health responsibilities, as well as authority to establish programs and conduct activities for the protection and promotion of public health. TEX. HEALTH & SAFETY CODE § 12.001(a). Before May of 2009, DSHS' activities involving the blood specimens at issue were conducted under this more general statutory authority.
C. House Bill 1672 Amendments to Chapter 33
Defendants contend House Bill 1672, passed by the Texas Legislature in the 81st Regular Legislative Session, and signed into law on May 27, 2009, effective immediately, amended Chapter 33 in ways which specifically address plaintiffs' concerns in this lawsuit. The new law requires that DSHS develop a disclosure statement informing the parent of a newborn child:
* That the genetic material used to conduct the newborn screening tests or "specimens" may be retained for use by the department or laboratory;
* How the specimens are managed and used; and
* That the parent limit the use of the specimens by providing a written statement prohibiting the department from retaining the specimens or using them for any purpose other than the conducting of newborn screening tests authorized under this chapter.
TEX. HEALTH & SAFETY CODE § 33.0111(a). Apart from mandating the content of the disclosure statement, the new law also specifies the form of the statement and the mechanics for its completion and return. Id. § 33.0111(b). These mandated disclosures are required to be made by the physician or other person attending the birth at the time the specimen is taken, and such disclosure must be verified by the physician or other person attending the birth using procedures developed by DSHS. Id. § 33.0111(c), (d).
In addition to these disclosures, the new law provides a parent may, by signing a written statement on a form to be provided by DSHS, prohibit the department from retaining any genetic material related to the newborn screening tests or using it for any purpose other than the NBS testing. Id. § 33.0112(a). This option to direct destruction is available to a parent regardless of when the specimen was drawn, and therefore applies to the plaintiffs in this lawsuit, or any other parent whose child's specimen is currently maintained by DSHS. If such demand is made the specimen must be destroyed within sixty days of receipt of the written statement. Id. § 33.0112(b). Moreover, upon reaching adulthood, an individual may direct DSHS to destroy any genetic material of the individual which is retained and used under the NBS program. TEX. HEALTH & SAFETY CODE § 33.0111(c).
Finally, the new law contains specific protections for maintaining the confidentiality of information obtained or developed by DSHS under the NBS program. Specifically, such information is not subject to the Texas Public Information Act, is not subject to subpoena, and may not otherwise be released or made public except under the limited circumstances set out in *948 the new law, including with consent of the person authorized to give such consent. The new law provides a list of permissible post-testing uses for the blood spot specimens, including public health research purposes if approved by an institutional review board or privacy board of the department as authorized by HIPAA and regulations promulgated thereunder. TEX. HEALTH & SAFETY CODE § 33.017(a), (b). Information which does not identify a child or the family of a child (this is, information which is "de-identified") may be released without consent if the disclosure is for:
* Statistical purposes;
* Purposes related to obtaining or maintaining laboratory certification, approval, or quality assurance to perform newborn screening tests;
* Purposes relating to review, quality assurance, or improvement of the Department's newborn screening under Chapter 33 of the Department's newborn screening program services;
* Research purposes, if the disclosure is approved by an institutional review board or privacy board of the department; or
* Quality assurance related to equipment and supplies with certain limitations.
Id. § 33.017(c).
D. Defendants' Mootness and/or Lack of Standing Arguments Under HB-1672
Defendants contend plaintiffs' proposed class action claims are moot and/or plaintiffs lack standing to proceed because these recent amendments to Chapter 33 satisfy all Fourth Amendment and privacy concerns raised by plaintiffs' lawsuit. Regarding plaintiffs' Fourth Amendment claim, defendants argue the new law satisfies plaintiffs' concerns about consent and scope of the alleged "search" or "seizure" because it provides for notice to the parent of the uses to which the NBS specimens may be put (in addition to the NBS testing), and allows the parent to opt out of such use by giving notice directing DSHS to destroy the infant's blood specimen once the NBS testing is complete. According to defendants, "[t]hese same disclosure, opt-out, and destruction-on-demand provisions of the new law also satisfy the privacy claims plaintiffs have asserted."
Plaintiffs acknowledge that the question of whether plaintiffs' claim for prospective relief may be moot depends on implementation of legislation just passed by the Texas Legislature in HB-1672. Plaintiffs also do not dispute the amendments to Chapter 33 satisfy their request for destruction of the blood samples. They argue, however, "[e]ven if they were to order destruction of their children's specimens, they cannot be certain that defendants have not used or permitted to be used their children's blood spots for purposes unrelated to newborn screening, or that information has not been unlawfully collected from the blood spot (such as DNA information) and stored in unknown databases." Plaintiffs therefore contend, under the case or controversy requirement, they continue to have a "personal stake in the outcome" of this litigation. Spencer, 523 U.S. at 7, 118 S.Ct. 978.
With the exception of plaintiff Pacheco, the Court agrees that the proposed class of plaintiffs have "suffered or continue to be threatened with an actual injury traceable to" defendants which is "likely to be redressed by a favorable judicial decision." Id. The proposed class of plaintiffs seek an injunction directing defendants to: (1) destroy the blood spots and any information gathered therefrom (such as DNA profiling ); (2) certify the class and thereafter "destroy all blood spots gathered since *949 2002 without informed parental consent or otherwise secure informed consent from affected parents to maintain such blood samples and spots"; (3) advise plaintiffs as to what use the blood spots have been put and disclose all financial transactions involved in the use of blood spots; and (4) to the extent defendants have obtained information on the specimens, defendants must destroy this information or see to it that it is destroyed if it has come into the hands of another entity.
Amendments to Chapter 33 remain silent as to whether defendants must (1) secure permission for the specimens they have gathered or destroy the specimens; (2) advise to what use infants' blood spots already gathered have been put; and (3) disclose all financial transactions involved in the use of blood spots. Additionally, the amended section in Chapter 33 requiring disclosure applies only to parents giving birth after DSHS properly implements HB-1672, which DSHS has not yet done. It does not require disclosure to parents previously affected. See TEX. HEALTH & SAFETY CODE § 33.0111(c). Specifically, section 33.0111(c) requiring disclosure is applicable "at the time a newborn child is subjected to screening tests" and, although section 33.0112(a) allows parents prior to HB-1672's enactment to direct destruction, the amended Chapter 33 does not explicitly require parents be notified that their child's blood spot has been retained by DSHS in the first instance.
As noted, defendants argue the new law contains specific protections for maintaining the confidentiality of information obtained or developed by DSHS under the newborn screening program. TEX. HEALTH & SAFETY CODE § 33.017. This provision, however, does not address the blood spots protected by confidentiality laws which are already in the possession of DSHS without parental consent. Even if plaintiffs were to direct destruction of their samples as defendants suggest, they have no assurance their infants' blood spots have not been used for research or that information has not been gathered therefrom, such as DNA profiling, while in defendants' possession.
In this light, plaintiffs acknowledge the new law provides the ability for parents, guardians, or managing conservators (collectively referred to as parents) to direct destruction of their children's blood spots upon discovering the spots have been stored indefinitely. Plaintiffs, however, challenge HB-1672's "silence on how already affected parents would be notified" would be notified of the amendments. Plaintiffs argue:
Notice to affected parents is absent in the new Chapter 33. Defendants accurately state the option to direct destruction is available to a parent regardless of when the specimen was drawn, and applies to any parent whose child's specimen is currently maintained by DSHS. See Dfs' Motion to Dismiss, Doc #25, at 6. However, parents cannot direct destruction if they are unaware their child's blood spot is being stored. Chapter 33 is silent to how the 2 to 4.2 million parents will even be made aware that their child's blood spot has been stored indefinitely for purposes unrelated to newborn screening.
Defendants respond that plaintiffs' claims are moot because DSHS intends to conduct an extensive public outreach program to give statewide notice of the Chapter 33 amendments. As defendants note, however, courts have declined to find that a claim is moot under circumstances such as these where a defendants' proposed conduct is voluntary, as opposed to mandated by statute. Buchanan v. Consolidated Stores Corp., 217 F.R.D. 178 (D. MD. 2003) (declining to find that plaintiff's *950 claims were moot where only assurance Court had that defendants would carry out particular action was defendants' voluntary enactment of policy or procedure); Mack v. Suffolk County, 191 F.R.D. 16, 21 (D. Mass 2000) (declining to find that plaintiffs' claims were moot in absence of statutory imperative imposed upon defendants). At this early stage in the proceedings, and in the absence of an imperative imposed by the amendments to Chapter 33, the Court declines to find that plaintiffs' claims are moot or that plaintiffs lack standing based on defendants' voluntary assurance that all members of the proposed class will receive notice of HB-1762. For these and the reasons set forth above, to this extent, defendants' motion to dismiss or for summary judgment based on mootness is denied.
With regard to plaintiff Nancy Pacheco, defendants argue her claims are moot because her child is not yet born. Plaintiffs filed an advisory (docket no. 40) after briefing closed informing the Court that Ms. Pacheco's baby was born on August 14, 2009. Plaintiffs contend in their advisory that plaintiff Pacheco has stated a claim for relief despite the fact that her child was not yet born at the time suit was filed.
In defending their case against mootness and lack of standing, plaintiffs take the position that "[t]he salient question at this juncture in the case is what to do with the blood specimens that defendants secretly collected between 2002-2009, without legal authority and parents' knowledge or consent, and are now storing, and any information taken therefrom." Under plaintiffs' salient definition of the issues, plaintiff Pacheco would not be a member of the proposed class because her child's blood was not collected and stored between 2002 and 2009. This conclusion is supported by plaintiffs' definition of the proposed class set forth in their motion to certify this matter as a class action. (Docket no. 16). Plaintiffs state they "seek class declaratory and injunctive relief on behalf of all similarly situated parents who have given birth in Texas since 2002, and their infants' blood samples or 'spots' were routinely and unlawfully collected, and stored indefinitely, at the Texas A & M Health Science Center School for Rural Public Health for undisclosed purposes unrelated to the purposes for which the infants' blood was originally drawn, without the knowledge or consent of the parents." Id. at 2. Under this definition of the class, plaintiff Pacheco would not be included because, as set forth above, she does not satisfy the criteria plaintiffs has set forth the for proposed class members. To this extent, defendants' motion to dismiss for mootness shall be granted. In all other respects, the motion shall be denied.
In sum, the Court finds that defendants' motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) should be granted in part and denied in part. Specifically, the Court finds that: (1) Eleventh Amendment immunity bars plaintiffs' claims brought directly against DSHS and TAMU; (2) Eleventh Amendment immunity bars plaintiffs' claims brought against the individual defendants under the Texas Constitution and Texas common law; and (3) plaintiffs lack standing to bring this suit against Roderick E. McCallum because they have not alleged an injury-in-fact. Accordingly, the motion to dismiss brought pursuant to Rule 12(b)(1) shall be granted to the extent that The Texas Department of State Health Services, Texas A & M University, and Roderick E. McCallum will be dismissed as party-defendants to the above-styled and numbered cause; plaintiffs' claims brought under the Texas Constitution and Texas common law will also be dismissed. In the absence of any objection by plaintiffs, the style of the case shall *951 be amended to reflect that Nancy W. Dickey, M.D., is named as defendant "in Her Official capacity as Vice Chancellor for Health Affairs of the Texas A & M University System and President of the Texas A & M University System Health Science Center." To the extent defendants move for dismissal under Rule 12(b)(6) for plaintiffs' failure to state a claim, the motion is denied. Thus, plaintiffs' claims brought against defendants Lakey and Dickey in their official capacities under 42 U.S.C. 1983 for alleged violations of the Fourth Amendment right to be free from unlawful searches and seizures and the Fourteenth Amendment right to be free from unlawful intrusions into privacy rights remain pending for disposition. The Court further finds that defendants' motion to dismiss or for summary judgment based on mootness should be granted in part and denied in part. Specifically, the Court finds that Nancy Pacheco should be dismissed as a party-plaintiff to this case. In all other respects, the motion shall be denied.
IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs' Original Complaint (docket no. 11) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED in PART and DENIED in PART. Specifically, the motion to dismiss brought under Rule 12(b)(1) is GRANTED such that The Texas Department of State Health Services, Texas A & M University, and Roderick E. McCallum are DISMISSED as party-defendants to the above-styled and numbered cause and plaintiffs' claims brought under the Texas Constitution and Texas common law are DISMISSED. In all other respects, the motion is DENIED.
IT IS FURTHER ORDERED that the style of this case is AMENDED to reflect that Nancy W. Dickey, M.D., is named as defendant "in Her Official capacity as Vice Chancellor for Health Affairs of the Texas A & M University System and President of the Texas A & M University System Health Science Center."
IT IS FURTHER ORDERED Defendants' Motion to Dismiss or for Summary Judgment Based on Mootness (docket no. 25) is GRANTED in PART and DENIED in PART. Specifically, the motion is GRANTED to the extent that Nancy Pacheco is DISMISSED as a party-plaintiff to the above-styled and numbered cause. In all other respects, the motion is DENIED.
IT IS FINALLY ORDERED that plaintiffs shall file, on or before September 30, 2009, an amended class action complaint which comports with the Court's rulings herein.
It is so ORDERED.