# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-10583

ENVIRONMENTAL CONSERVATION ORGANIZATION

Plaintiff – Appellant

v.

CITY OF DALLAS

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS and SOUTHWICK, Circuit Judges, and DRELL, District Judge.[*]

SOUTHWICK, Circuit Judge:

The Environmental Conservation Organization appeals the dismissal of its Clean Water Act citizen suit against the City of Dallas, Texas, arguing that the district court erroneously concluded that its suit was barred under the doctrine of res judicata. We agree that the citizen suit should have been dismissed, but not for the reasons given by the district court. We hold that the citizen suit became moot prior to the district court's entry of final judgment; therefore, we vacate the judgment because it was rendered without jurisdiction.

## I. Facts and Procedural Background

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

The City of Dallas, Texas ("City"), operates a municipal separate storm sewer system ("MS4") that collects, channels and discharges storm water runoff into the Trinity River and its tributaries. The City operates this separate storm sewer system pursuant to a Clean Water Act permit (the "MS4 Permit"). See 33 U.S.C. § 1342. The MS4 Permit delineates permissible and impermissible discharges into the Trinity River watershed and mandates the implementation of a storm water management program ("SWMP"). The SWMP imposes planning and monitoring requirements to ensure that non-storm water and other pollutants are not discharged through the separate storm sewer system. See 33 U.S.C. § 1342(p); 40 C.F.R. § 122.26.

The Environmental Conservation Organization ("ECO") is a non-profit environmental watch group based in Dallas, Texas. Some of ECO's members use the Trinity River and its tributaries for recreational purposes. In September 2003, due to problems with the City's operation of its separate storm sewer system and the polluted appearance of some Dallas-area water bodies, ECO notified the City that it would file a citizen suit in order to remedy alleged violations of the MS4 Permit and the Clean Water Act ("CWA" or "Act"). In accordance with the requirements of the CWA citizen-suit provision, ECO simultaneously notified the Administrator of the Environmental Protection Agency (EPA) and the Texas Commission on Environmental Quality ("TCEQ") of the alleged violations and ECO's intent to initiate a citizen suit against the City if no corrective action was taken. See 33 U.S.C. § 1365(b). In October 2003, ECO sent a revised notification letter to the City, the EPA Administrator and the TCEQ, pressing its concerns regarding the alleged violations and reiterating its intent to bring a citizen suit.

In December 2003, over sixty days after sending notice of the alleged violations, ECO filed a CWA citizen suit against the City in federal district court. ECO's complaint alleged that illicit pollutant discharges from various City-

owned facilities violated both the MS4 Permit and the CWA (because they constituted discharges from point sources without a permit). The complaint also alleged that the City violated its MS4 Permit by failing to comply with the SWMP requirements contained therein. ECO sought civil penalties and injunctive relief under the CWA.

While neither the EPA nor the State of Texas commenced an enforcement action against the City prior to ECO's filing this suit, the EPA had begun to investigate the City's separate storm sewer system.[1] In February 2004, the EPA issued an administrative compliance order that identified various violations of the City's MS4 Permit and the CWA. See 33 U.S.C. § 1319(a). The compliance order instructed the City to rectify these violations or arrange a "show cause" meeting with the EPA in order to explain why no enforcement action should be taken in regards to the alleged violations. Shortly after the order was issued, the City and the EPA began negotiating a settlement of the violations noticed therein. The EPA encouraged ECO to participate in the settlement discussions, but ECO declined. Ultimately, the City reached a settlement with the EPA.

In May 2006, the EPA, joined by the State of Texas, filed a CWA enforcement action against the City in federal district court (the "EPA enforcement action"). On the same day, EPA filed a proposed consent decree that contained the terms of the settlement agreement. The filing of the consent decree triggered a public notice and comment period, during which ECO was the only person or organization to submit comments. See 28 C.F.R. 50.7. ECO did not oppose entry of the consent decree, but expressed concern that the punitive provisions and some remedial provisions were inadequate. At the close of the public comment period, the EPA responded to ECO's comments and moved for

---

[1] It appears that EPA's first physical "inspections" of the City's separate storm sewer system occurred in November 2003. However, EPA asserts that it began reviewing certain reporting documents filed by the City as early as July 2003.

entry of the consent decree. In August 2006, the district court granted EPA's unopposed motion to enter the consent decree. See United States v. City of Dallas, No. 3:06-cv-00845 (N.D. Tex. Aug. 28, 2006).[2]

The consent decree is a lengthy and detailed document. It requires, among other things, that the City pay $800,000 in civil penalties, undertake supplemental environmental projects totaling at least $1.2 million, meet minimum staffing requirements in its environmental quality and sewer system monitoring departments, and provide ongoing compliance reports to the EPA. The City is also subject to an audit of its storm water system within three years of the consent decree's entry and must pay stipulated penalties if it is found to be in violation of any of its provisions. The decree's appendices provide strict timetables for satisfaction of these provisions, which are posted on a website and available to the public.

During the time in which EPA was investigating and negotiating with the City, ECO's citizen suit remained pending on the district court's docket. After entering the consent decree in the EPA enforcement action, the district court directed the City to file a motion for summary judgment in ECO's action so that the court could determine whether the consent decree precluded ECO's citizen suit. The City moved for summary judgment, arguing that ECO's suit should be dismissed because the final judgment in the EPA enforcement action precluded re-litigation of the same claims in a citizen suit. Alternatively, the City argued that ECO's claims were mooted by the resolution of the EPA enforcement action. ECO opposed the motion to dismiss, arguing first that the language and statutory scheme of the CWA indicated that the res judicata doctrine and principles of mootness could not be invoked to dismiss a prior-filed citizen suit.

---

[2] ECO had a right to intervene in the EPA enforcement action, see 33 U.S.C. § 1365(b)(1)(B), but declined to do so despite the district court's encouragement.

Alternatively, ECO argued that neither the elements of res judicata nor the test for mootness had been satisfied.

The district court relied on res judicata to dismiss ECO's citizen suit, rejecting arguments that both the privity and similarity of claims requirements were not met in its case. The court noted that even though "the Fifth Circuit has never considered whether res judicata applies to a citizen enforcement action under the CWA," precedents from other circuits had applied res judicata to citizen suits under similar circumstances. Envtl. Conservation Org. v. City of Dallas, 516 F. Supp. 2d 653, 657 (N.D. Tex. 2007). The district court did not reach the alternative argument regarding mootness. ECO appealed here.

## II. Discussion

### A. Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Greenwell v. State Farm Mut. Auto Ins. Co., 486 F.3d 840, 841 (5th Cir. 2007). Summary judgment may be granted only if the pleadings and evidence show that there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-27 (1986). The record must be viewed in the light most favorable to the non-moving party; all justifiable inferences will be drawn in the non-movant's favor. TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002).

This case also requires us to examine the district court's jurisdiction. The City argues that ECO's claims were moot at the time that the district court entered summary judgment. We review questions of federal jurisdiction de novo, including arguments that a case or controversy has become moot. In re Scruggs, 392 F.3d 124, 128 (5th Cir. 2004). When the district court had no jurisdiction, our authority is not over the merits but exists "merely for the purpose of

correcting the error of the lower court in entertaining the suit . . . ." New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 882 (5th Cir. 1998) (citation omitted).

B. Standing

"Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents. In re Scruggs, 392 F.3d at 128. Therefore, before considering any other matters raised by the parties, we are obliged to "resolve the standing question as a threshold matter of jurisdiction." Cole v. Gen. Motors Corp., 484 F.3d 717, 721 (5th Cir. 2006).

The U.S. Department of Justice, participating in this appeal as amicus curiae, urges us to resolve this case on res judicata grounds and argues that recent Supreme Court precedent permits us to do so, pretermitting the mootness issue. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184 (2007). In Sinochem, the Supreme Court held that a federal court may dismiss a case on grounds of forum non conveniens although jurisdictional issues remain unresolved. Id. at 1190. The Court pragmatically recognized that "where subject-matter or personal jurisdiction is difficult to determine, and forum non conveniens considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." Id. at 1194. The Third Circuit recently relied on Sinochem in affirming the dismissal of a resident alien's petition for habeas corpus on res judicata grounds, although the government also challenged the federal court's jurisdiction to entertain the petition. Gonzalez-Cifuentes v. I.N.S., 253 F. App'x 173, 175 & n.2 (3d Cir. 2007) (unpublished).

We recognize that, in some limited instances, "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem, 127 S. Ct. at 1191 (internal quotation marks omitted). However, we do not think this is one of those instances. In this case, the res judicata analysis is no less burdensome than the standing inquiry. ECO argues that the common law doctrine of res judicata cannot be applied to CWA citizen suits, and there is some precedent to that effect. See Sierra Club v. Coca-Cola Corp., 673 F. Supp. 1555 (M.D. Fla. 1987). The City points to later authority that disagrees. See EPA v. City of Green Forest, 921 F.2d 1394, 1404 (8th Cir. 1990). Even were we to resolve that argument in the City's favor, we would still face an apparent circuit split regarding the proper "privity" analysis in the context of determining the preclusive effect of an EPA-negotiated consent decree on a prior-filed CWA citizen suit. Compare Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743 (7th Cir. 2004) (satisfaction of res judicata "privity" element requires showing of "diligent prosecution") with City of Green Forest, 921 F.2d at 1394 (applying res judicata without any discussion of "diligent prosecution"); see Ellis v. Gallatin Steel Co., 390 F.3d 461, 473 (6th Cir. 2004) (expressly rejecting "diligent prosecution" requirement when applying res judicata to a prior-filed Clean Air Act citizen suit).

This is not "a textbook case for immediate [res judicata] dismissal." Sinochem, 127 S. Ct. at 1194. Therefore, we turn to our threshold consideration: was the district court bound to dismiss ECO's suit as moot?

C. Mootness Analysis

1. A citizen suit may be dismissed as moot

Congress enacted the CWA with the express purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Among the myriad of mechanisms for achieving this goal, Congress empowered private citizens to bring suit in federal court

against alleged violators of the Act. 33 U.S.C. § 1365. Under the CWA citizen-suit provision, federal courts are authorized to enter injunctions and assess civil penalties, payable to the United States Treasury, against any person found to be in violation of "an effluent standard or limitation" under the Act. § 1365(a); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 175 (2000). The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it "permit[s] citizens to abate pollution when the government cannot or will not command compliance." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 62 (1987).

However, Congress placed some limitations on the commencement of citizen suits under the CWA. First, a citizen may not commence suit prior to sixty days after giving notice of the alleged violation to the EPA, the State, and the alleged violator. § 1365(b)(1)(A). Second, no citizen suit may be brought if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action" against the alleged violator. § 1365(b)(1)(B). The Act is silent as to which mechanisms may be invoked to dispense with citizen suits – like ECO's – that have been properly commenced under Section 1365(b).

ECO argues that "courts should not employ judicially-created mootness or res judicata doctrines" to dismiss a properly filed citizen suit because this would conflict with Congress's statutory scheme under the CWA. ECO invokes the canon of statutory construction (expressio unius est exclusio alterius) that instructs "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." Christensen v. Harris County, 529 U.S. 576, 583 (2000). ECO posits that because Congress imposed certain express limitations on a citizen's right to prosecute a CWA suit, all other methods of limiting that right are excluded. Under ECO's theory, the decision to dismiss a properly commenced citizen suit due to mootness constitutes an impermissible judicial addition to Congress's enumerated limitations on such suits.

ECO's argument is flawed for two reasons. First, the "thing to be done" under Section 1365(b) is the commencement of a citizen suit, not the resolution of such a suit. Second, and more importantly, mootness is part of the Article III standing inquiry applicable to all suits filed in federal court. See Laidlaw, 528 U.S. at 189-94. Thus, when dismissing a citizen suit as moot, a court does not graft some "judicially-created doctrine" onto the CWA. Rather, a finding that the "irreducible constitutional minimum of standing" is not satisfied means the court has no constitutional authority to resolve the dispute between the citizen and the alleged violator. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). One court has noted that the citizen-suit "provision confers standing to enforce the Clean Water Act to the full extent allowed by the Constitution." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 152 (4th Cir. 2000) (en banc). The "full extent of the law" does not extend beyond constitutional limits. Accordingly, this court has recognized that developments subsequent to the filing of a citizen suit may moot the citizen's case. See Carr v. Alta Verde Indus., Inc., 931 F.2d 1055, 1061-65 (5th Cir. 1991).[3]

Having established that the jurisdictional mootness inquiry is required in the context of a CWA citizen suit, we turn to an application of mootness principles to ECO's suit.

2. Standard for determining mootness

As a general rule, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." Carmouche, 449 F.3d at 661. A case should not be declared moot "[a]s long as the parties maintain a 'concrete interest in the outcome' and effective relief is

---

[3] Other circuits have reached this conclusion as well. Comfort Lake Ass'n v. Dresel Contracting, Inc., 138 F.3d 351, 354-55 (8th Cir. 1998); Atlantic States Legal Found., Inc. v. Eastman Kodak Co., 933 F.2d 124, 128 (2d Cir. 1991); Chesapeake Bay Found. v. Am. Recovery Co., 769 F.2d 207, 209 (4th Cir. 1985).

available to remedy the effect of the violation . . . ." Dailey v. Vought Aircraft Co., 141 F.3d 224, 227 (5th Cir. 1998). But a case will become moot where "there are no longer adverse parties with sufficient legal interests to maintain the litigation" or "when the parties lack a legally cognizable interest in the outcome" of the litigation. In re Scruggs, 392 F.3d at 128. As the Supreme Court has noted, "it is not enough that a dispute was very much alive when the suit was filed; . . . [t]he parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990) (citations and internal quotation marks omitted).

ECO argues that, if the EPA-negotiated consent decree can moot its citizen suit, the test for mootness should be the traditional, stringent standard that was applied by this court in Carr v. Alta Verde Industries. According to Carr, in order to have a case dismissed as moot, "[t]he defendant must demonstrate that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 931 F.2d at 1062 (quoting Gwaltney, 484 U.S. at 66) (some quotation marks omitted; emphasis in original). Under this standard, the party asserting mootness bears the "formidable burden" of showing that its alleged violations of the CWA cannot reasonably be expected to recur. Laidlaw, 528 U.S. at 189-90. As such, ECO argues that the City must prove that the consent decree "actually stops all violations without any likelihood the violations will recur" in order to have its citizen suit dismissed as moot.

However, the test for mootness that ECO urges us to apply is derived from cases in which the defendant argued that its voluntary conduct mooted the plaintiff's suit. See Laidlaw, 528 U.S. at 189 ("The only conceivable basis for a finding of mootness in this case is Laidlaw's voluntary conduct . . . ."); Carr, 931 F.2d at 1061-65 (cattle feedlot's voluntary improvements and application for CWA permit did not moot citizen suit). This stringent standard is appropriate when considering voluntary cessations of CWA violations because it "protects

10

plaintiffs from defendants who seek to evade sanction by predictable protestations of repentance and reform." Gwaltney, 484 U.S. at 66 (quotation marks omitted). For example, if we were considering an argument by the City that ECO's claims were moot because the City voluntarily hired the requisite number of compliance and monitoring staff or voluntarily set aside funds for supplemental environmental projects, we would employ the standard discussed in Laidlaw and Carr because there would no impediment to the City's laying off the new hires or reallocating the funds after ECO's suit was dismissed.

Far from voluntary, the City's compliance with the terms of its MS4 Permit and the CWA has been compelled by an EPA enforcement action and the resulting court-approved consent decree. Further, the actions that allegedly moot ECO's suit are actions of third parties (the EPA and a federal court), not those of the City. As such, we would not be relying solely on the City's assurances that it will not "return to [its] old ways." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). Under such circumstances, Carr's stringent test for "voluntary" mootness is inappropriate. Instead, we apply the test that has been endorsed by the Second and Eighth Circuits, under which ECO's claims for relief are moot unless ECO (the citizen-suit plaintiff) proves that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the consent decree. Comfort Lake, 138 F.3d at 355; Eastman Kodak, 933 F.2d at 128.[4]

This standard for determining whether a CWA citizen suit has been mooted by a subsequent government enforcement action respects Congress's

---

[4] The distinction we draw between the traditional mootness inquiry and the more stringent "voluntary cessation" test is not unique to the circumstances in this case. Federal courts have long-recognized that allegations by a defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that "happenstance" or official acts of third parties have mooted the case. See DeFunis v. Odegaard, 416 U.S. 312, 316-19 (1974); Locke v. Bd. of Pub. Instruction of Palm Beach County, 499 F.2d 359, 363-64 (5th Cir. 1974); see also Laidlaw, 528 U.S. at 214 (Scalia, J., dissenting).

intent that citizen suits "supplement rather than . . . supplant government action." Gwaltney, 484 U.S. at 60. The primary function of a citizen suit is to spur agency enforcement of law. See Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988) (such suits help "ensure that the agencies fulfill their duties under the CWA responsibly"). That is why the Supreme Court has noted that "citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" Gwaltney, 484 U.S. at 60 (quoting S. Rep. No. 92-414, at 64 (1971), reprinted in 1972 U.S.C.C.A.N. 3668, 3730).

Were we to employ the stringent "voluntary cessation" standard urged by ECO to these circumstances – where compliance was brought about as the result of an EPA enforcement action and a court-approved consent decree – we would effectively cede primary enforcement authority under the CWA to citizens acting in the role of private attorneys general. Such ceding would discourage defendants in a citizen from entering a consent decree with federal or state enforcement agencies, because defendants would remain exposed to duplicative penalties. See Gwaltney, 484 U.S. at 60-61; Eastman Kodak, 933 F.2d at 127. Not only might this lead to under-enforcement of the CWA, it would also shift primary responsibility from the expert agencies to the necessarily generalist courts. Cf. Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 579 (5th Cir. 1996) (primary regulation of pollution should be by the EPA, not through a federal district court's supervision); Eastman Kodak, 933 F.2d at 127.

Further, the "realistic prospect" mootness standard that we employ today comports with Congress's policy that only "diligent prosecutions" preempt citizen suits. See § 1365(b)(1)(B). If a citizen-suit plaintiff demonstrates that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the government-backed consent decree, then a less-than-diligent prosecution might have been shown. Placing the burden on the citizen-suit plaintiff to demonstrate that his claims are not mooted by the consent

decree is also in step with Congressional policy. See Karr v. Hefner, 475 F.3d 1192, 1198 (10th Cir. 2007) (noting that the citizen-suit plaintiff bears the burden to demonstrate that an EPA prosecution is not diligent). For these reasons, we adopt the "realistic prospect" test for mootness that has been employed by the Second and Eighth Circuits in this context.

3. ECO's citizen suit is moot

We now consider whether ECO can satisfy its burden to show a realistic prospect that the CWA violations alleged in its citizen suit will continue notwithstanding the consent decree. The district court found that the consent decree resolved every violation alleged in the ECO citizen suit. Envtl. Conservation Org., 516 F. Supp. 2d at 659 & n.6. ECO argues that evidence in the record shows that the City is engaging and will continue to engage in violations of its MS4 Permit and the CWA.

ECO relies primarily on an affidavit submitted by Craig T. Maske, a civil engineer with an expertise in water resources whom ECO retained as an expert. Mr. Maske's affidavit, sworn on November 10, 2006, details various past violations by the City and offers his opinion that these violations will continue. However, Mr. Maske does not mention the consent decree in his affidavit, nor does he offer an explicit opinion that the consent decree will not adequately address the violations discussed therein. Therefore, Mr. Maske's affidavit does not address the critical fact in our mootness inquiry.

Other evidence is said to be found in the depositions of several City employees. This testimony, given in April and May 2006, provides evidence solely of past violations by the City. No employee mentions the consent decree or offers any prediction as to whether the decree will address the relevant violations. ECO asks us to infer from the City's "distinct track record of failing to comply with CWA requirements" that these violations will continue and suggests that there is authority for drawing such an inference on summary

judgment. See Orange Env't, Inc. v. County of Orange, 860 F. Supp. 1003, 1019 (S.D.N.Y. 1994). Such an inference requires that the polluter have a poor "track record for complying with [state agency] compliance orders . . . ." Id. The only compliance order entered against the City is the one that is the focus of this appeal. We refuse to draw the inference that the Orange court drew under such dissimilar circumstances.

After reviewing the consent decree and comparing it to ECO's complaint, we agree with the district court that it addresses every MS4 Permit and CWA violation alleged in ECO's citizen suit. ECO has not pointed to specific facts on appeal that would support an inference that the City will continue to engage in violations that were alleged in ECO's citizen suit but not addressed by the consent decree. See Sedgwick James, 276 F.3d at 759 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."). For these reasons, ECO cannot show a realistic prospect that any of the violations alleged in its citizen suit will continue notwithstanding the consent decree. As we explain below, ECO's claims for both injunctive relief and civil penalties are moot.

### (a) Injunctive relief

The consent decree requires the City to take steps to correct the planning, staffing, monitoring, and compliance deficiencies that resulted in the violations alleged in ECO's suit. ECO argues there is no mootness as to injunctive relief because the immediate cessation of all violations has not been ordered.

Even had ECO prevailed on its citizen suit, the district court was not bound to order the immediate cessation of all violations. Traditional equitable principles control the decision to enter an injunction, under which the court has broad discretion to balance the interests of the parties. 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY LANE, FEDERAL PRACTICE AND

PROCEDURE § 2942 (2d ed. 1990). The district court might even have denied injunctive relief altogether. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 314-20 (1982). But even if some form of injunctive relief were ordered, the district court might have denied ECO's request for immediate relief if the more practical solution was a permanent injunction that mandated a cessation of violations over a period of time. See e.g., Reserve Mining Co. v. EPA, 514 F.2d 492, 537-40 (8th Cir. 1975); N.Y. Coastal Fishermen's Ass'n v. N.Y. Dep't of Sanitation, 772 F. Supp. 162, 169-70 (S.D.N.Y. 1991). We also note the practical difficulty of enforcing an immediate cessation of violations that occur, in large part, due to rainfall over the City. Thus, as applied to this case, the "realistic prospect" test considers whether violations will "continue" in the sense that the violations will not be cured even after the remedial plan imposed by the consent decree has been fully implemented in accordance with reasonable timetables.[5]

The consent decree achieved some court-ordered mandatory relief that is injunctive in nature. Because ECO is not entitled to any particular form of injunctive relief under the CWA – and, therefore, was not guaranteed to achieve any other form of relief in its citizen suit than that imposed under the consent decree – its claims for injunctive relief are moot.

(b) Civil penalties

There is some authority that even where a defendant's voluntary acts of compliance are sufficient to moot a citizen's request for injunctive relief, those voluntary acts will not necessarily moot a related claim for civil penalties. Comfort Lakes, 138 F.3d at 356; Carr, 931 F.2d at 1065 n.9. This is not a case of voluntary compliance. This appeal requires us to determine whether acts of

---

[5] Under the consent decree, all mandatory planning and any construction must be completed within three to four years. This is not an unreasonably lengthy period for requiring compliance. Cf. Friends of Milwaukee's Rivers, 382 F.3d at 760-61 (eight-year deadline for completion of remedial construction projects was permissible).

compliance that have been compelled by an EPA-negotiated consent decree can moot a citizen's claim for civil penalties.

First, it is significant that the consent decree imposed $800,000 in civil penalties on the City. This does not represent the maximum penalty permissible under the statute. See 33 U.S.C. § 1319(d). However, even in the event of a successful citizen suit, the district court is not bound to impose the maximum penalty afforded under the statute. In fact, the district court is required to consider a myriad of factors, some of which are mitigating in nature, when determining the appropriate civil penalty under the CWA. § 1319(d); see Cedar Point, 73 F.3d at 576 (district court did not abuse its discretion by imposing $186,070 civil penalty even though maximum permissible penalty was $20,225,000). Thus, the penalties imposed by the consent decree are arguably the same penalties that ECO could have achieved in a successful citizen suit.

More importantly, ECO assumed the role of private attorney general in the pursuit of its citizen suit. Any penalty that it achieved would have been paid into the United States Treasury. After ECO initiated its citizen suit, the United States government initiated its own enforcement action and extracted some civil penalties from the City. The resulting consent decree (approved by the U.S. Department of Justice) represents the federal government's discretionary resolution of the level of penalty needed for the same environmental concerns raised by ECO. A private attorney general is no longer needed to raise the issue of the proper civil penalty. That ECO might have sought stiffer penalties against the City does not change the result; ECO is not permitted to upset the primary enforcement role of the EPA by seeking civil penalties that "the Administrator chose to forego . . . ." Gwaltney, 484 U.S. at 61. The appropriate government agencies have exercised their discretion to extract some penalties from the City and forego others. By proceeding with its citizen suit, ECO could accomplish nothing other than to revisit the government's "dispositive

administrative settlement." Eastman Kodak, 933 F.2d 127; compare Atlantic States Legal Found. v. Pan Am. Tanning, 993 F.2d 1017, 1022 (2d Cir. 1993) (distinguishing Eastman Kodak where settlement "did not cover all of the violations plaintiffs allege[d] and assessed small fines of only $6,600"). For these reasons, ECO's claim for civil penalties is moot.

## III. Conclusion

Underlying our decision today is the recognition that ECO's concrete interest in the outcome of the litigation was the public's interest, not an interest specific to ECO or its members. See Green Forest, 921 F.2d at 1404-05. Once the EPA filed an enforcement action and secured a consent decree that adequately addressed the same violations alleged in ECO's suit, the public interest was vindicated to the full extent of ECO's ability to vindicate it. When nothing was left for ECO to accomplish, it no longer had a stake in the litigation.

Because the district court's consent decree in the EPA's enforcement action addressed all of the CWA violations alleged in ECO's citizen suit, extracted reasonable civil penalties, and mandated that the City undertake significant corrective measures, ECO's citizen suit became moot when the consent decree was entered. Accordingly, the district court's judgment in this case was rendered without jurisdiction and must be vacated. Goldin v. Bartholow, 166 F.3d 710, 718 (5th Cir. 1999).[6]

We VACATE the district court's summary judgment in favor of the City and REMAND this case to the district court with instructions that ECO's citizen suit be dismissed as moot.

---

[6] We are aware that ECO has appealed the denial of its request for costs under Section § 1365(d). Envt'l Conservation Org. v. City of Dallas, No. 07-11247 (5th Cir. filed Dec. 10, 2007). Our opinion today should not be read to express any position on the merits of that appeal. See Murphy v. Fort Worth Indep. Sch. Dist., 334 F.3d 470, 471 (5th Cir. 2003) (a determination of mootness does not preclude an award of attorneys' fees).