# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 17, 2012

No. 11-30549

Lyle W. Cayce
Clerk

LOUISIANA ENVIRONMENTAL ACTION NETWORK,

Plaintiff–Appellant

v.

CITY OF BATON ROUGE; PARISH OF EAST BATON ROUGE,

Defendants–Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Louisiana Environmental Action Network filed this citizen suit against Defendants–Appellees the City of Baton Rouge and the Parish of East Baton Rouge, alleging violations of the Clean Water Act. The Defendants filed a Rule 12(b)(6) motion to dismiss, asserting that the citizen suit was barred under the "diligent prosecution" provision of the Act. 33 U.S.C. § 1365(b)(1)(B). The district court granted the motion to dismiss, but on the ground that the 2002 consent decree mooted Plaintiff's claims. On appeal, Plaintiff contends that the district court erred in granting the Defendants' motion to dismiss. For the following reasons, we REVERSE the district court's judgment and REMAND for further proceedings consistent with this opinion.

No. 11-30549

## I. BACKGROUND

*A. Overview of the Clean Water Act*

The Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1251 *et seq.*, was enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act prohibits "the discharge of any pollutant" into navigable waters except as authorized by specified sections of the Act. 33 U.S.C. § 1311(a). One of these specified sections establishes the National Pollutant Discharge Elimination System ("NPDES"). 33 U.S.C. § 1342. Pursuant to this section, the Administrator of the Environmental Protection Agency ("EPA") or an authorized State can issue NPDES permits, which allow the discharge of pollutants according to certain conditions. *Id.* "NPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. Noncompliance with a permit constitutes a violation of the Act." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000) (citation omitted).

The holder of a state NPDES permit is subject to both federal and state enforcement action for failure to comply with the limitations imposed in the permit. 33 U.S.C. §§ 1319, 1342. Furthermore, the Act contains a citizen suit provision, which authorizes any citizen to file a civil action to enforce an effluent standard in an NPDES permit, subject to certain limitations. 33 U.S.C. § 1365(a), (b).[1] Subsection (a) of the citizen suit provision, entitled "Authorization; jurisdiction," provides that, "[e]xcept as provided in subsection (b) of this section . . . , any citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter." § 1365(a)(1).

---

[1] The Act defines "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

2

No. 11-30549

However, pursuant to subsection (b) of the CWA's citizen suit provision, entitled "Notice," citizen suits are subject to two limitations. § 1365(b). First, sixty days before commencing a citizen suit, the citizen must give notice of the alleged violation to the EPA, the alleged violator, and the State in which the alleged violation occurs. § 1365(b)(1)(A). The Supreme Court has stated that "the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). Furthermore, "[t]he requirement that notice be given to the responsible officials highlights their primary role in enforcing the Act compared to the supplementary position of the citizen." *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 396 (5th Cir. 1985).

Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). "The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to *supplement* rather than to supplant governmental action." *Gwaltney*, 484 U.S. at 60 (emphasis added). The Supreme Court noted that the "legislative history of the Act reinforces this view of the role of the citizen suit." *Id.* The Senate Report stated that the "Committee intends the great volume of enforcement actions [to] be brought by the State," and that citizens are allowed to bring suit only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Id.* (alteration in original) (quoting S. REP. No. 92-414, p. 64 (1971)). Thus, the citizens' role in enforcing the Act is "interstitial" and should not be "intrusive." *Id.* at 61; *see also Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it 'permit[s] citizens to abate

pollution when the government cannot or will not command compliance.'") (alteration in original) (quoting *Gwaltney*, 484 U.S. at 62).

*B. Statement of Facts and Proceedings*

The City of Baton Rouge (the "City") and the Parish of East Baton Rouge (the "Parish") own and operate three wastewater treatment facilities: the North, Central, and South Wastewater Treatment Plants. These facilities discharge treated sanitary wastewater into the Mississippi River. Pursuant to the Act, the Louisiana Department of Environmental Quality ("LDEQ") administers a permit program, called the Louisiana Pollutant Discharge Elimination System ("LPDES"). 33 U.S.C. § 1342(b). The LDEQ issued three NPDES permits to the City and Parish for the discharges from the three plants. A standard condition in the permits, commonly known as the Eighty-Five Percent Rule, requires that the permit holder reduce the amount of Biochemical Oxygen Demand ("BOD") and Total Suspended Solids ("TSS") such that the thirty-day average amount of BOD and TSS in the wastewater discharged from the plant is at least eighty-five percent less than the amount of BOD and TSS in the sewage entering the plant. *See* 40 C.F.R. § 133.102.

In March 1988, the United States filed a complaint against the City and the State of Louisiana alleging violations of the CWA at the North, Central, and South Wastewater Treatment Plants. *United States v. City of Baton Rouge, et al.*, No. 3:88-cv-00191 (M.D. La.). In December 1988, the district court entered a consent decree to resolve those claims and to require full compliance with the CWA by December 31, 1996. In 1997, the district court approved a modification to the consent decree that provided additional time for the City to complete construction at the North Plant and increased stipulated penalties for violations of effluent limitations at that facility.

On November 13, 2001, the United States and the State of Louisiana filed an enforcement action against the City and Parish, alleging that the same three

No. 11-30549

wastewater facilities violated their NPDES permits and the Act. *United States v. City of Baton Rouge, et al.*, No. 3:01-cv-00978 (M.D. La.). The same day, the United States and the State of Louisiana lodged a proposed consent decree in the district court. In January 2002, the United States published notice of the proposed consent decree and solicited public comments in the Federal Register. *See* 67 Fed. Reg. 2669 (2002). After receiving no comments, the United States and the State of Louisiana filed a motion to enter the consent decree.

On March 15, 2002, the district court entered the consent decree (the "2002 consent decree"), which superseded and terminated the 1988 consent decree. One of the objectives of the 2002 consent decree is for the City and Parish to "achieve and maintain compliance with [their] NPDES permits and the CWA." 2002 consent decree ¶ 11(A). In order to achieve this objective, the 2002 consent decree requires that the City and Parish implement extensive, physical remedial measures according to "applicable schedules." *Id.* ¶ 11(B). Additionally, the 2002 consent decree provides for "stipulated penalties" for certain violations of the 2002 consent decree and of the NPDES permits. *Id.* ¶¶ 66-83. With regard to effluent discharges, the 2002 consent decree provides for less stringent effluent limitations—a seventy-five percent reduction of BOD and TSS—until the City and Parish reach full completion of the remedial program. *Id.* ¶ 39. The 2002 consent decree states that the City and Parish shall not be subject to penalties for failure to comply with the eighty-five percent reduction set out in the NPDES permits, provided that the plants comply with the seventy-five percent reduction set out in the 2002 consent decree. *Id.*

In 2006, as required by the 2002 consent decree, the City and Parish submitted a Second Remedial Measures Action Plan (the "Second RMAP"), wherein the City and Parish proposed to complete all construction and achieve fully operational status of its wastewater facilities by January 1, 2015. In 2007, the EPA and the LDEQ approved the Second RMAP. In November 2008, the

5

United States and the State of Louisiana lodged a proposed modification to the 2002 consent decree, which would allow for various changes to the Second RMAP but would not alter the January 2015 compliance deadline. The United States published a notice of the proposed modification in the Federal Register and solicited public comments. *See* 73 Fed. Reg. 67882 (2008). In April 2009, the district court approved the modification of the 2002 consent decree.

The Louisiana Environmental Action Network ("LEAN") is a non-profit community organization incorporated and operating under the laws of Louisiana. LEAN describes itself as "an umbrella organization for several environmental and citizen groups in Louisiana . . . . LEAN has more than 1,700 individual members, some of whom reside, own property, work, and recreate in areas near and downstream of [the City and Parish's] plants . . . . LEAN's purpose is to preserve and protect Louisiana's land, air, water, and other natural resources." LEAN's members "complain[ed] that untreated wastewater and raw sewerage are being discharged onto their properties," and LEAN became concerned about "sanitary sewer overflows occurring in association with the [three] plants." Also, LEAN analyzed the City and Parish's Discharge Monitoring Reports, which indicated that there are ongoing violations at the three plants of the Eighty-Five Percent Rule and of the 2002 consent decree's seventy-five percent reduction requirement.

On November 24, 2009, LEAN sent a Notice of Violation to the City and Parish, the EPA, and the LDEQ pursuant to the Act. 33 U.S.C. § 1365(b)(1)(A). LEAN sent a revised notice to the same entities on December 21, 2009. In the revised notice, LEAN alleged that the North, Central, and South Wastewater Treatment Plants are in violation of the CWA for failing to meet the effluent standards set out in the NPDES permits. Additionally, LEAN alleged that "the plants have failed to even meet the relaxed effluent limitations set forth in the [2002] consent decree."

No. 11-30549

After providing sixty-days' notice, LEAN filed this citizen suit against the City and Parish (collectively, the "Defendants") in the United States District Court for the Middle District of Louisiana on March 22, 2010. In its amended complaint, LEAN alleged that it had met its notice obligations, stating that "[n]either EPA nor LDEQ has commenced or is diligently prosecuting a civil or criminal action in court to redress the violations specified in the Notice and Revised Notice." LEAN asserted two causes of action against the Defendants. First, LEAN alleged that the three wastewater treatment plants violate both the eight-five percent reduction requirement in the three NPDES permits and the seventy-five percent reduction requirement in the 2002 consent decree. Second, LEAN alleged that the Defendants are in violation of their permits by failing to "properly operate and maintain all facilities and systems of treatment and control . . . which are installed or used by the permittee to achieve compliance." LEAN sought a declaration that the Defendants are in violation of the CWA and the three permits; an injunction compelling the Defendants' compliance with the permits; an award of civil penalties payable to the U.S. Treasury; attorney's fees and litigation expenses; and any other relief the court deems appropriate.

On June 3, 2010, the Defendants filed a motion to dismiss LEAN's suit pursuant to Federal Rule of Civil Procedure 12(b)(6). The Defendants argued that LEAN's citizen suit was barred under the "diligent prosecution" provision of the CWA. 33 U.S.C. § 1365(b)(1)(B). The Defendants stated that they are still subject to the 2002 consent decree, which allows the Defendants to come into compliance with the CWA by January 1, 2015. The Defendants contended that both of LEAN's claims "pertain to violations that require compliance with the same standards" that are the subject of the 2002 consent decree. The Defendants argued that, given the EPA's ongoing enforcement of the 2002 consent decree, LEAN's citizen suit is precluded by the Act and should be

dismissed. The Defendants asserted that "allowing LEAN to maintain this citizen suit undermines the [CWA's] enforcement scheme."

In its opposition to the Defendants' motion to dismiss, LEAN responded that the "mere existence of an 8-yr old consent decree—in an administratively closed case—does not establish diligent prosecution." LEAN argued that the Defendants cannot immunize themselves from liability for violations of the CWA by relying on the 2002 consent decree. After the Defendants filed a reply to LEAN's opposition and LEAN filed a sur-reply, the district court held oral argument on the Defendants' motion to dismiss on March 16, 2011.

The district court granted the Defendants' Rule 12(b)(6) motion to dismiss. In its order (the "Order"), the court first discussed the Defendants' argument that the "diligent prosecution" provision of the Act bars LEAN's citizen suit. 33 U.S.C. § 1365(b)(1)(B). The court discussed Supreme Court and circuit court caselaw regarding the citizen suit provision of the CWA and the "diligent prosecution" bar. The court stated that "[t]he Act strips courts of subject matter jurisdiction over citizen suits once the EPA has timely commenced judicial or administrative enforcement actions." However, the court did not rule on whether LEAN's suit is barred under § 1365(b)(1)(B).

Instead, the district court analyzed whether LEAN's claims were rendered moot by the 2002 consent decree. The court relied on our decision in *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008), explaining that we held that "a consent decree properly entered into by the EPA and the City of Dallas to address alleged violations of the Clean Water Act mooted a pre-existing citizen suit filed subsequently for the same purposes." The court recognized that the *City of Dallas* case was "not exactly analogous"—as the *City of Dallas* citizen suit was filed *prior* to the entry of the consent decree whereas, in the present case, LEAN's citizen suit was filed *after* the entry of the 2002 consent decree. Despite this difference, the court applied

the mootness standard enunciated in *City of Dallas*, which is that "the party denying mootness must show that there is a realistic prospect that the alleged violations will continue despite the [existence of the consent decree.]"

The court noted that the Defendants stated in their pleadings and at oral argument that "they are in full compliance with the 2002 consent decree, and are on schedule to complete massive updates and improvements to the three wastewater treatment plants by January, 2015 (in accordance with the 2002 consent decree)." The court held that the Defendants' compliance with the 2002 consent decree addresses LEAN's grievances, thereby rendering LEAN's claims moot. The court stated that "[p]rior to the January 2015 compliance deadline set by the 2002 consent decree, no remedy is available to [LEAN] absent a finding of non-compliance by the Court having proper jurisdiction to enforce the decree." The court explained that if LEAN "is correct in its assertion that Defendants are not complying with the 2002 consent decree, the Court encourages [LEAN] to take up the matter . . . with the EPA, as the EPA has the power to enforce the consent decree." LEAN timely appealed the district court's judgment.

## II. DISCUSSION

*A. The District Court Erred in Dismissing LEAN's Action as Moot*

Although the district court granted the Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim, the court reasoned that LEAN's action must be dismissed based on mootness. In the Order, the court explained that LEAN's claims were rendered moot by the Defendants' ongoing compliance with the 2002 consent decree. Thus, the district court's dismissal of LEAN's action was based on a lack of federal jurisdiction. *See City of Dallas*, 529 F.3d at 524 (stating that a mootness argument raises a question of federal jurisdiction). We have stated that "we are not bound by the label the district court puts on its action where underlying facts indicate that a different action was in fact intended." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (citation

omitted). Therefore, based on the district court's reasoning, we construe its dismissal of LEAN's suit as a dismissal for lack of jurisdiction, not for failure to state a claim. *See id.*

"We review questions of federal jurisdiction *de novo*, including arguments that a case or controversy has become moot." *City of Dallas*, 529 F.3d at 524 (citation omitted). "Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Id.* at 524-25 (citations and internal quotation marks omitted). "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Id.* at 525 (citation omitted).

In *City of Dallas*, we held that, where the entry of a consent decree occurred *after* the filing of a CWA citizen suit, the citizen suit is rendered moot unless the citizen-suit plaintiff "proves that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the consent decree." *Id.* at 528 (citations omitted). In the present case, the district court applied the *City of Dallas* mootness standard to LEAN's action, despite the fact that LEAN's citizen suit was filed years *after* the entry of the 2002 consent decree. In applying the standard, the court found that LEAN could not meet the "reasonable prospect" test because the Defendants had asserted that they are in compliance with the conditions of the 2002 consent decree. Thus, the district court held that the 2002 consent decree rendered LEAN's citizen suit moot.

We hold that the district court erred in applying the *City of Dallas* mootness standard to the present case.[2] In *City of Dallas*, we "recognized that

---

[2] Environment America ("EA"), "a federation of [twenty-nine] non-profit, non-partisan, state-based environmental advocacy organizations with a longstanding interest in the vigorous and effective enforcement of the Clean Water Act," filed an *amicus curiae* brief in support of LEAN. EA asserts that the district court should not have conducted a mootness analysis, because the 2002 consent decree was entered *prior* to the filing of LEAN's suit.

developments *subsequent* to the filing of a citizen suit may moot the citizen's case." 529 F.3d at 526 (emphasis added) (citation omitted). We stated that, "[a]s a general rule, any set of circumstances that eliminates actual controversy *after* the commencement of a lawsuit renders that action moot." *Id.* at 527 (emphasis added) (citation and internal quotation marks omitted). In *City of Dallas*, the plaintiff filed its citizen suit *prior* to the entry of a consent decree between the defendant and the United States and the State of Texas. Thus, it was proper for the court to examine whether the *subsequent* development of the consent decree mooted the plaintiff's properly-filed citizen suit.

In the instant case, however, LEAN filed its citizen suit approximately eight years after the entry of the 2002 consent decree between the Defendants and the United States and the State of Louisiana. Neither party argues that any circumstances *subsequent* to the filing of LEAN's lawsuit have rendered LEAN's citizen suit moot. Thus, the district court erred in examining whether the 2002 consent decree, and the ongoing enforcement of its conditions, mooted LEAN's citizen suit. *See* 13B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3533 (3d ed.) ("Mootness doctrine encompasses the circumstances that destroy the justiciability of a suit *previously suitable* for determination.") (emphasis added). Therefore, the district court improperly dismissed LEAN's citizen suit based on mootness.

## B. The "Diligent Prosecution" Bar

Having determined that the dismissal of LEAN's action was not warranted on mootness grounds, we now turn to the alternate ground not resolved by the district court—whether LEAN's citizen suit is precluded under the CWA's "diligent prosecution" provision. 33 U.S.C. § 1365(b)(1)(B).

On appeal, the Defendants assert that "[t]he diligent prosecution bar to this citizen suit is the controlling and deciding issue" and that we "may affirm the district court ruling on that issue alone." The Defendants contend that the

"diligent prosecution" bar is jurisdictional and therefore strips the district court of subject matter jurisdiction to hear the case. LEAN, however, contends that the "diligent prosecution" bar is not jurisdictional. Therefore, LEAN asserts that the bar does not preclude its citizen suit, because the district court was obligated to give it "an opportunity to prove its well-pled allegations that there is no diligent prosecution."

We must decide an issue of first impression in this circuit—whether the CWA's "diligent prosecution" bar is jurisdictional. This issue has important practical implications for the court and parties in this case. If the provision is not jurisdictional, then LEAN is protected by the safeguards of Federal Rule of Civil Procedure 12(b)(6)—the district court is required to accept all well-pleaded facts in LEAN's complaint as true and view the facts in the light most favorable to LEAN. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff.") (citation omitted). However, if the provision is jurisdictional, and thus goes to the district court's subject matter jurisdiction, then the district court is not obligated to accept the assertions in LEAN's complaint as true. Instead, the district court is empowered "to make factual findings which are decisive of jurisdiction," because "[j]urisdictional issues are for the court . . . to decide." *Williamson*, 645 F.2d at 413 (citations omitted). With this understanding of the important practical consequences in mind, we turn to recent Supreme Court cases that provide guidance on determining whether a provision is jurisdictional.

The Supreme Court "has endeavored in recent years to 'bring some discipline' to the use of the term 'jurisdictional.'" *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (citation omitted); *see, e.g.*, *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010); *Union Pac.*

No. 11-30549

*R.R. v. Bhd. Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 130 S. Ct. 584 (2009); *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006); *Kontrick v. Ryan*, 540 U.S. 443 (2004). The Court has stated that "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory . . . should not be given the jurisdictional brand." *Henderson*, 131 S. Ct. at 1202-03 (citations omitted). "Among the types of rules that should not be described as jurisdictional are . . . 'claim-processing rules,'" which are "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 1203 (citations omitted); *see also Kontrick*, 540 U.S. at 455 ("Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.").

The Court has acknowledged that "the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice." *Reed Elsevier, Inc.*, 130 S. Ct. at 1234. Many courts have "mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." *Id.* at 1234-44 (citations omitted). The Court's cases "evince a marked desire to curtail such 'drive-by jurisdictional rulings,' which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action." *Id.* at 1244 (alteration in original) (citations omitted). Such "'drive-by jurisdictional rulings' . . . should be

accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim." *Arbaugh*, 546 U.S. at 511 (citation omitted).[3]

The Supreme Court has emphasized that courts should not attach the "jurisdictional" label lightly, because of the important practical—and sometimes "drastic"—consequences that may flow from the label. *See Henderson*, 131 S. Ct. at 1202 ("Th[e] question [of whether a provision is "jurisdictional"] is not merely semantic but one of considerable practical importance for judges and litigants."); *see also Gonzalez*, 132 S. Ct. at 648 ("Courts . . . should not lightly attach those 'drastic' consequences to limits Congress has enacted."). The Court has explained that "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system." *Henderson*, 131 S. Ct. at 1202. For instance, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez*, 132 S. Ct. at 648 (citation omitted). Additionally, "[o]bjections to subject-matter jurisdiction . . . may be raised at any time," such as after trial, which can result in the waste of "many months of work on the part of attorneys and the court." *Henderson*, 131 S. Ct. at 1202. Furthermore, "if subject-matter jurisdiction turns on contested facts,

---

[3] With regard to the CWA's "diligent prosecution" provision, several courts have stated in passing that the provision is jurisdictional. *See, e.g.*, *Chesapeake Bay Found. v. Am. Recovery Co.*, 769 F.2d 207, 208 (4th Cir. 1985) (noting that the "diligent prosecution" bar is "an exception to the jurisdiction granted in subsection (a) of § 1365"); *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage* Dist., 556 F.3d 603, 606 (7th Cir. 2009) (stating that the CWA "strips the courts of subject matter jurisdiction over citizens' suits where the State [or EPA] has timely commenced judicial or administrative enforcement actions" under § 1365(b)(1)(B)). These statements are aptly classified as "drive-by jurisdictional rulings" because the courts did not attempt to distinguish "between true jurisdictional conditions and nonjurisdictional limitations on causes of action." *Reed Elsevier, Inc.*, 130 S. Ct. at 1244 (citations and internal quotation marks omitted). Therefore, these statements are afforded "no precedential effect" on whether the "diligent prosecution" bar is jurisdictional. *Arbaugh*, 546 U.S. at 511 (citation and internal quotation marks omitted).

the trial judge may be authorized to review the evidence and resolve the dispute on her own." *Arbaugh*, 546 U.S. at 514 (citations omitted).

Given the important differences between jurisdictional provisions and claim-processing rules, the Supreme Court has provided guidance to the lower courts on the proper analysis to use to determine if a statutory provision is jurisdictional. In *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), the Court enunciated the following "readily administrable bright line" rule: A provision is jurisdictional "[i]f the Legislature *clearly states* that a threshold limitation on a statute's scope shall count as jurisdictional." *Id.* at 515-16 (emphasis added). However, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516. Additionally, in *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010), the Court elaborated that "context, including [the Supreme] Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." *Id.* at 1248. The Court stated that "the jurisdictional analysis must focus on the 'legal character' of the requirement, which [is] discerned by looking to the condition's text, context, and relevant historical treatment." *Id.* at 1246 (citations omitted). Ultimately, the question is whether Congress mandated that the particular provision be "jurisdictional." *See Henderson*, 131 S. Ct. at 1203. The Court's clear statement approach "is suited to capture Congress' likely intent and also provides helpful guidance for courts and litigants." *Id.* (citation omitted).

Applying these principles to the present case, we conclude that Congress has not clearly mandated that the CWA's "diligent prosecution" provision is jurisdictional. We first analyze the text of this particular provision to determine whether the provision "was meant to carry jurisdictional consequences." *Henderson*, 131 S. Ct. at 1204. Section 1365(b)(1)(B) provides:

No. 11-30549

(b) Notice
No action may be commenced–
> (1) under subsection (a)(1) of this section–
>> (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

The language of § 1365(b)(1)(B) does not "clearly state[]" that the "diligent prosecution" bar is jurisdictional. *Arbaugh*, 546 U.S. at 515. This provision "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). Although it is true that § 1365(b)(1)(B) is phrased in mandatory language, the Supreme Court has "rejected the notion that 'all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.'" *Henderson*, 131 S. Ct. at 1205 (alteration in original) (citation omitted). Thus, the language of § 1365(b)(1)(B) does not provide a clear indication that Congress intended the provision to be jurisdictional.

The placement of the "diligent prosecution" provision within the CWA also does not indicate that Congress "wanted [the] provision to be treated as having jurisdictional attributes." *Id.* at 1205. Congress placed § 1365(b)(1)(B) in the "Notice" section of the CWA citizen suit provision. *See id.* ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.") (alteration in original) (citation and internal quotation marks omitted). The "Notice" section also includes the requirement that a citizen provide notice of the alleged violation to the alleged violator, the State, and the EPA sixty-days prior to filing a citizen suit. *See* 33 U.S.C. § 1365(b)(1)(A). The sixty-day notice provision is a typical "claim-processing rule." *See Henderson*, 131 S. Ct. at 1203; *Zipes*, 455 U.S. at 398 (holding that Title VII's requirement that claimants timely file a discrimination charge with the EEOC before filing an action in

federal court is nonjurisdictional). The placement of the "diligent prosecution" bar in the "Notice" section, alongside a typical claim-processing rule, suggests that Congress intended the "diligent prosecution" bar to be a claim-processing rule. *See Henderson*, 131 S. Ct. at 1205 (finding that the placement of a provision in a subchapter entitled "Procedure" indicated that "Congress regarded the 120-day limit as a claim-processing rule").

Furthermore, the "diligent prosecution" provision is "located in a provision 'separate' from those granting federal courts subject-matter jurisdiction over . . . [the] claims." *Reed Elsevier, Inc.*, 130 S. Ct. at 1245-46 (citation omitted). The district courts have subject matter jurisdiction over CWA citizen suits pursuant to the general federal question jurisdiction statute, 28 U.S.C. § 1331,[4] and the CWA's jurisdictional provision, 33 U.S.C. § 1365(a).[5] Neither of these provisions specifies any threshold requirement for subject matter jurisdiction, let alone ties its jurisdictional grant to the issue of diligent prosecution. *See Arbaugh*, 546 U.S. at 515 ("But neither § 1331, nor Title VII's jurisdictional provision, 42 U.S.C. § 2000e–5(f)(3) . . . specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor."); *see also Reed Elsevier, Inc.*, 130 S. Ct. at 1246 ("[N]either § 1331, . . . nor § 1338(a), which is specific to copyright claims, conditions its jurisdictional grant on whether copyright holders have registered their works before suing for infringement."). Instead, the "diligent prosecution" bar is located in a separate provision of the CWA that does not pertain or refer to jurisdiction. *See Arbaugh*, 546 U.S. at 515-16 (holding

---

[4] Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[5] The CWA's jurisdiction-conferring provision, located in the final paragraph of subsection (a), states that "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation . . . ." 33 U.S.C. § 1365(a).

that Title VII's employee-numerosity requirement is nonjurisdictional because it is located in a provision separate from those granting courts subject matter jurisdiction and the provision does not speak in jurisdictional terms); *see also Reed Elsevier, Inc.*, 130 S. Ct. at 1245-46 (holding that the Copyright Act's registration requirement is not jurisdictional primarily because it is located in a provision separate from those granting the courts subject matter jurisdiction and the provision does not "clearly state[]" that the requirement is jurisdictional). Thus, § 1365(b)(1)(B)'s location in a provision separate from the jurisdiction-granting provisions indicates that Congress did not intend the provision to be jurisdictional.

The "historical treatment" factor also does not indicate that the provision ranks as jurisdictional. *Reed Elsevier, Inc.*, 130 S. Ct. at 1246. No Supreme Court cases have determined that the "diligent prosecution" provision of the CWA, or any similar provision in other environmental statutes, is jurisdictional. "There is thus no 'long line of [Supreme] Court[] decisions left undisturbed by Congress' on which to rely." *Gonzalez*, 132 S. Ct. at 648 n.3 (citation omitted); *see Henderson*, 131 S. Ct. at 1203 ("When a long line of [Supreme] Court[] decisions left undisturbed by Congress has treated a similar requirement as jurisdictional, we will presume that Congress intended to follow that course.") (citations and internal quotation marks omitted).

Based on the foregoing analysis, we conclude that Congress has not provided a clear statement that the "diligent prosecution" bar is jurisdictional. Absent such a clear statement from Congress, we hold that the "diligent prosecution" bar is a nonjurisdictional limitation on citizen suits. *See Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

No. 11-30549

Our conclusion that the CWA's "diligent prosecution" provision is nonjurisdictional is buttressed by the Seventh Circuit's recent decision in *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483 (7th Cir. 2011). There, the court held that the "diligent prosecution" provision of the Resource Conservation and Recovery Act ("RCRA")—which is virtually identical to the "diligent prosecution" provision of the CWA[6]—is not jurisdictional. *Id.* at 492. Applying the guiding principles of the recent Supreme Court cases, the Seventh Circuit concluded that, because "RCRA's limits on citizen suits appear in separate provisions that do not 'speak in jurisdictional terms,'" the RCRA "diligent prosecution" bar is a nonjurisdictional claim-processing rule. *Id.* (citations omitted).

Having determined that the CWA's "diligent prosecution" bar is not jurisdictional, the question still remains whether the "diligent prosecution" provision precludes LEAN's action in the present case. The Defendants assert that the EPA's continued enforcement of the 2002 consent decree constitutes diligent prosecution. Indeed, the Defendants point to the extensive remedial measures they are undertaking, as required by the 2002 consent decree, which are projected to cost the Defendants over $1 billion. The Defendants contend that LEAN's "lawsuit stands as an impediment" to their efforts to achieve compliance with the CWA. However, LEAN asserts that the EPA is not diligently prosecuting the 2002 consent decree, noting the plants' ongoing, non-compliant discharges and the EPA's failure to impose stipulated penalties for these violations. LEAN argues that the issue of "diligent prosecution" is a fact-intensive question that can only be answered after the proper development of a record. We take no position on these arguments. We think it wise for the district court to determine in the first instance whether LEAN's suit is precluded

---

[6] *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 23 (1989) (noting that the notice provisions of the RCRA and the CWA, like those of many other environmental statutes, were "modeled upon § 304 of the Clean Air Amendments of 1970").

19

No. 11-30549

under the "diligent prosecution" provision. *See Breaux v. Dilsaver*, 254 F.3d 533, 538 (5th Cir. 2001) ("Although this court may decide a case on any ground that was presented to the trial court, we are not required to do so.") (citation omitted).

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.